1  JOSEPH C. ALM, SBN 294362
   TESLA, INC.
2  901 Page Avenue
   Fremont, CA 94538-734
3  Email: jalm@tesla.com
   Phone: (650) 681-5000
4
   CHARLES GRAVES, SBN 197923
5  Email: tgraves.@wsgr.com
   JORDAN R. JAFFE, SBN 254886
6  Email: jjaffe@wsgr.com
   JAMIE OTTO, SBN 295099
7  Email: jotto@wsgr.com
   MIKAELA BURKHARDT, SBN 328112
8  Email: mburkhardt@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
9  Professional Corporation
   One Market Plaza
10 Spear Tower, Suite 3300
   San Francisco, CA 94105
11 Telephone:  (415) 947-2000
   Facsimile:  (415) 947-2099
12
   Attorneys for Plaintiff
13 Tesla, Inc.

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                  SAN JOSE DIVISION

18

19 TESLA, INC.,                        )  Case No.: 5:22-cv-2725
                                       )
20         Plaintiff,                  )  **COMPLAINT**
                                       )
21      v.                             )  **(1) Violation of the Defend Trade Secrets**
                                       )  **Act (18 U.S.C. § 1831 *et seq.*)**
22 ALEXANDER YATSKOV,                  )
                                       )  **(2) Violation of the California Uniform**
23                                     )  **Trade Secrets Act (Cal. Civ. Code § 3426**
         Defendant.                    )  **et seq.)**
24                                     )
                                       )
25                                     )  **(3) Breach of Contract**
                                       )
26                                     )  **JURY TRIAL DEMANDED**
                                       )
27 _____ )

28

COMPLAINT

1    Plaintiff Tesla, Inc. ("Tesla" or "Plaintiff"), complains and alleges against Defendant

2   Alexander Yatskov ("Yatskov" or "Defendant"), as follows:

3                                   **NATURE OF THE ACTION**

4    1.    This is a case about illicit retention of trade secrets by an employee who, in his

5   short time at Tesla, already demonstrated a track record of lying and then lying again by providing

6   a "dummy" device to try and cover his tracks.  Defendant's effective refusal to return Tesla's

7   confidential information—and lie about it—has left Tesla no choice but to commence this action.

8    2.    Defendant was hired on or about January 31, 2022, to work on Tesla's advanced

9   supercomputer for artificial intelligence, named Dojo.  Defendant was specifically hired to work

10   as a thermal engineer to help address the technological challenges that come from designing and

11   running a complex, custom supercomputer.  But after being hired, Tesla learned that Defendant

12   lied on his resume about his work history and expertise.  His work communications became erratic.

13   He was repeatedly unable to complete tasks he was hired for and provided incoherent answers

14   when pressed for explanations.

15    3.    Tesla engineers then learned that, in direct contravention of Tesla's policies and

16   repeated instructions from his supervisors, Defendant was removing Tesla confidential

17   information from work devices and accounts, accessing it on his own personal devices, and

18   creating Tesla documents containing confidential Project Dojo details on a personal computer.

19   Tesla uncovered evidence of Defendant emailing confidential Tesla information from his personal

20   email address to his Tesla email address, although it is unclear to Tesla how he exfiltrated the

21   information in the first instance.

22    4.    Since Defendant had been repeatedly instructed not to use a personal computer to

23   work on Project Dojo, he was put on administrative leave and asked to bring in his personal devices

24   for forensic imaging to recover Tesla's information.  During an interview preceding his

25   administrative leave, Defendant admitted to storing Tesla confidential information on his personal

26   devices.

27    5.    Defendant then brought in his alleged personal computer for imaging.  But upon

28   inspection, Tesla discovered the computer was ***not*** the device where Defendant previously

COMPLAINT                                              -2-

1   admitted using Tesla confidential information.  Instead, it was a "dummy" laptop incapable of

2   accessing the relevant information.  Moreover, apart from a logon the same morning as the

3   interview, nobody had logged onto the computer since November 2020.  And during that lone

4   morning logon, Defendant tried to add in information to make the laptop look like it may have

5   accessed only inoffensive Tesla information, like an offer letter, in an effort to deceive Tesla's

6   information security team.  Defendant had lied to Tesla about what device he provided for

7   inspection, effectively refusing to return Tesla's confidential information.

8          6.      After providing this "dummy" laptop to try and hide his activity, Defendant

9   resigned from Tesla.

10         7.      Faced with this duplicitous conduct, refusal to cooperate and subsequent exit from

11   Tesla, Tesla is now forced to seek Court relief to safeguard its confidential information.  Because

12   Tesla cannot monitor activity outside its network, Tesla does not know whether Defendant took

13   additional files that he had access to during his employment or whether he has shared any of the

14   files he stored on his personal devices with others.

15         8.      This action is based on Defendant's: (1) violation of the Defend Trade Secret Act,

16   18 U.S.C. § 1831, *et seq*.; (2) violation of the California Uniform Trade Secret Act, Cal. Civ. Code

17   § 3426, *et seq*.; and (3) breach of contract.

18                                   **THE PARTIES**

19         9.      Plaintiff Tesla is a corporation organized and existing under the laws of Delaware,

20   with its headquarters located at the Tesla Austin Gigafactory, 13101 Harold Green Road, Austin,

21   Texas 78725.  Tesla develops, manufactures, sells, and leases electric vehicles and energy

22   generation and storage systems throughout the United States and abroad.

23         10.     Defendant Alexander Yatskov is a former Tesla employee.  Upon information and

24   belief, he resides in Manteca, California.

25                            **JURISDICTION AND VENUE**

26         11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

27   § 1331 and 18 U.S.C. § 1836(c), as it arises under the federal Defend Trade Secrets Act, 18 U.S.C.

28   § 1831 *et seq.*

COMPLAINT                                    -3-

1    12.    This Court has supplemental jurisdiction over Plaintiff's state law claims under the

2  California Uniform Trade Secret Act, Cal. Civ. Code § 3426, *et seq*. and for breach of contract

3  pursuant to 28 U.S.C. § 1367(a) because Tesla's state law claims are so closely related to its federal

4  claim that they form part of the same case and controversy under Article III of the United States

5  Constitution.

6    13.    Venue is proper in the United States District Court for the Northern District of

7  California pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions

8  giving rise to the claims asserted occurred in this District.

9                    **INTRADISTRICT ASSIGNMENT**

10    14.    A substantial part of the events and omissions that gave rise to the claims asserted

11  took place in Santa Clara County, California.  Thus, pursuant to Civil L.R. 3-2(c) and (e), this

12  action should be assigned to the San Jose Division of this District.

13                        **FACTUAL ALLEGATIONS**

14              *Tesla's Trade Secrets and Confidential Information*

15    15.    Among Tesla's numerous innovations is its development of Dojo, a supercomputer

16  designed in-house at Tesla to help solve difficult engineering problems, such as vehicle autonomy.

17  That effort includes processing massive amounts of data, including video data from Tesla's

18  vehicles and using that data to train neural nets to create autonomous driving software.  Dojo was

19  designed to address deficiencies in prior supercomputer platforms with custom chip and hardware

20  designs.  Dojo enables faster performance and superior power consumption, together with

21  innovations in scalability.  Discussions of the importance of this project to Tesla, as well as its

22  potential, can be found in Tesla's AI Day presentation on August 19, 2021.  *See*

23  https://www.youtube.com/watch?v=j0z4FweCy4M.

24    16.    One important aspect of designing and managing a supercomputer such as Dojo is

25  thermal management.  With the massive size and speed of a supercomputer like Dojo comes large

26  amounts of heat as well.  Accordingly, Tesla has a team of engineers dedicated to designing cooling

27  systems for Dojo to optimize power, safety, cost and environmental efficiency.  Tesla has collected

28  massive amounts of data concerning thermal characteristics of Dojo under various cooling

COMPLAINT                    -4-

1   configurations, as well as hardware and software designs for cooling efficiencies.  As part of its

2   work routine, the team Defendant worked in runs complex simulations of how different thermal

3   designs affect heat distribution, and in turn, affect the balancing of speed, power, safety, cost and

4   environmental concerns. These thermal designs and data are confidential and tightly guarded

5   within Tesla.  This Dojo thermal design and data are referred to as the "Dojo Thermal Data and

6   Designs" or the "Tesla Trade Secrets."

7         17.   Those like Defendant on the Dojo team have access, not just to thermal-related data,

8   but also to other confidential information concerning the Dojo project.

9         18.   Developing the Tesla Trade Secrets was expensive and time-consuming.  Tesla has

10   spent thousands of hours of work to develop the Tesla Trade Secrets based on the cumulative hours

11   spent by its Dojo team over years.  The Tesla Trade Secrets are not publicly available and are never

12   shared externally.

13         19.   The Tesla Trade Secrets are extremely valuable to Tesla and would be to a

14   competitor.  Access to the Tesla Trade Secrets would enable engineers at other companies to

15   reverse engineer Tesla's Trade Secrets to create similar supercomputer thermal systems in a

16   fraction of the time and with a fraction of the expense it took Tesla to build it.  Third-party

17   engineers could not recreate these thermal designs without having Tesla Trade Secrets in the first

18   place.   The technology also would inform competitors of Tesla's thermal designs for its

19   supercomputer – providing a roadmap to copy Tesla's innovation.

20         20.   For these reasons, Tesla takes extensive measures to ensure that the Tesla Trade

21   Secrets remain strictly confidential and are never shared externally.  The engineers who do have

22   access to the files are not permitted to download them to personal devices or cloud storage.

23         21.   Tesla's engineers also sign a comprehensive set of agreements and policies as a

24   condition of their employment which require them to protect Tesla's confidential information and

25   not to disclose or misuse that information, including the Tesla Trade Secrets.  These include an

26   Employee Nondisclosure And Inventions Assignment Agreement ("NDA"), which requires

27   employees to hold Tesla's information "in strictest confidence" and prohibits them from using or

28   disclosing any Tesla "Proprietary Information," including "technical data, trade secrets, know-

1  how, … plans, designs, … methods, processes, … data, programs, … and other business

2  information."

3       22.     The NDA also requires employees, upon termination, to "immediately return to the

4  Company all originals and copies of all hard copy and electronic documents, files and other

5  property of the Company in [their] possession or control or to which [they] have access …

6  regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB

7  flash drives, flash memory cards, and cloud storage)."

8       23.     Those on the Dojo project sign an additional NDA, specific to the Dojo project, to

9  safeguard its confidential information and limit access to project information on a need-to-know

10  basis.  This included Defendant, who signed that additional agreement on February 16, 2022.

11       24.     Tesla secures its physical facilities by restricting access to authorized personnel and

12  then monitoring actual access with security guards and cameras.  Visitors to Tesla's facilities must

13  check in with a receptionist or security, sign a nondisclosure agreement, and submit to a

14  photograph.  Visitors must also always be escorted by a Tesla employee while at the facilities.

15       25.     Tesla further protects its trade secrets by using password-protected and firewall-

16  protected networks and servers that are only accessible to current Tesla employees with proper

17  credentials.

18       26.     Tesla also has an Information Security team that monitors its systems for suspicious

19  activity, including unauthorized downloading of confidential information.

20  ***Defendant Alexander Yatskov Promises to Protect Tesla's Trade Secrets and Confidential***

21  ***Information as a Condition of His Employment at Tesla***

22       27.     On or about January 31, 2022, Tesla hired Defendant Alexander Yatskov as a

23  Principal Thermal Engineer.

24       28.     Among Defendant's assigned responsibilities was to help develop and improve

25  thermal management solutions for Project Dojo.  As part of that work, Defendant could run

26  simulations to assess thermal system designs for Tesla's Dojo supercomputer.  Like other Project

27  Dojo employees, Tesla expected him to work at Tesla's Fremont, California offices.

28

1    29.    As part of his employment, Tesla provided Defendant with both a laptop and

2  desktop to perform his work.

3    30.    As a condition of his employment, Defendant signed and agreed to abide by the

4  terms of the NDA as well as a Dojo-specific NDA.

5    ***Defendant's Theft of Tesla's Trade Secrets and Attempts to Conceal His Misconduct***

6    31.    On May 2, 2022, after being put on administrative leave, Defendant resigned from

7  Tesla.  His last day at Tesla was April 6, 2022.

8    32.    As described above, when confronted by Tesla's information security team,

9  Defendant eventually admitted he downloaded Tesla confidential information from his Tesla

10  accounts and devices to his personal devices.

11    33.    But Defendant has refused to return Tesla's confidential information and lied to

12  Tesla about it.  Specifically, Defendant agreed to provide his phone and his personal device where

13  he admitted transferring Tesla confidential information.  The device Defendant provided, however,

14  was not the device described.  Instead, it was a "dummy" device.  Other than the same day he gave

15  it to Tesla, nobody had logged onto it since November 2020.  And during that lone morning logon,

16  Defendant tried to add in information to make the laptop look like it may have accessed only

17  inoffensive Tesla information, like an offer letter, in an effort to deceive Tesla's information

18  security team. By this misconduct, Defendant has effectively refused to return Tesla's confidential

19  information and attempted to hide that refusal.  Defendant knew he was providing a "dummy"

20  device to Tesla in order to hide his activities because he had logged onto the device the earlier that

21  same morning.

22    34.    On information and belief, Tesla has not uncovered all of Defendant's theft.

23  Defendant's track record of lying and providing a "dummy" computer raises grave concerns that

24  he continues to misappropriate Tesla's Trade Secrets.  On information and belief, Defendant has

25  indeed further used and/or disseminated that information.

26

27

28

COMPLAINT                                        -7-

**First Cause of Action**

(**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831** *et seq.*)

35.      Tesla re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 34 of this Complaint.

36.      As set forth above, Defendant misappropriated files revealing Dojo Thermal Data and Designs constituting "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*  Tesla is the owner of these Tesla Trade Secrets.

37.      The Tesla Trade Secrets relate to the design, development, and manufacturing, of products and services used in, and intended for use in, interstate and foreign commerce.

38.      The Tesla Trade Secrets derive independent economic value from not being generally known to the public, to Tesla's competitors, or to other persons who can obtain economic value from the disclosure or use of the information.

39.      The Tesla Trade Secrets are not readily ascertainable through proper means or from generally available, public sources.

40.      At all relevant times, Tesla has made reasonable efforts to protect and preserve the secrecy of the Tesla Trade Secrets.

41.      Defendant misappropriated the Tesla Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by, *inter alia*, knowingly acquiring the Tesla Trade Secrets through improper means, and disclosing and/or using the Tesla Trade secrets without Tesla's express or implied consent.

42.      Defendant knew or had reason to know that, at the time he accessed, downloaded and used the Tesla Trade Secrets, this information was acquired and obtained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that he did not have Tesla's express or implied consent to do so.

43.      Defendant acquired the Tesla Trade Secrets by virtue of his employment with Tesla, not through his own independent research and efforts, in direct violation of his legal obligations to Tesla.

1    44.    On information and belief, Defendant failed to fully delete or return the Tesla Trade

2  Secrets that he misappropriated and continues to use or disclose the Tesla Trade Secrets without

3  Tesla's consent.

4    45.    On information and belief, Defendant has gained or will gain substantial benefit

5  from his misappropriation of the Tesla Trade Secrets, to Tesla's substantial detriment.

6    46.    As a result of Defendant's unlawful conduct, the Tesla Trade Secrets have been

7  compromised, and Tesla is substantially threatened by Defendant's further use and/or

8  dissemination of that information.

9    47.    As a direct, proximate, and foreseeable result of Defendant's misappropriation of

10  the Tesla Trade Secrets, Tesla has been damaged in an amount not yet ascertained.

11    48.    Defendant's unlawful actions were willful and malicious, and with the deliberate

12  intent to injure Tesla's business, thereby entitling Tesla to exemplary damages and/or attorneys'

13  fees in an amount to be proven at trial pursuant to 18 U.S.C. § 1836(b)(3)(D).

14    49.    Tesla is entitled to an order requiring Defendant, his agents, and all persons acting

15  in concert with him, from using or disclosing, or threatening to use or disclose, the Tesla Trade

16  Secrets, and restraining Defendant from obtaining any benefit from his wrongful possession and

17  use of the Tesla Trade Secrets.  Unless enjoined by this Court, said misappropriation of the Tesla

18  Trade Secrets, actual or threatened, will cause great and irreparable injury to Tesla.  Tesla has no

19  adequate or other remedy at law for such acts and threatened acts.

20                                    **Second Cause of Action**

21    **(Violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*)**

22    50.    Tesla re-alleges and incorporates by reference each and every allegation contained

23  in paragraphs 1 through 49 of this Complaint.

24    51.    As set forth above, Defendant misappropriated files revealing Dojo Thermal Data

25  and Designs constituting "trade secrets" under the California Uniform Trade Secrets Act, Cal. Civ.

26  Code § 3426, *et seq.*  Tesla is the owner of these Tesla Trade Secrets.

27

28

1    52.    The Tesla Trade Secrets derive independent economic value from not being

2  generally known to the public, to Tesla's competitors, or to other persons who can obtain economic

3  value from disclosure or use of the information.

4    53.    At all relevant times, Tesla has made reasonable efforts to protect and preserve the

5  secrecy of the Tesla Trade Secrets.

6    54.    Defendant misappropriated the Tesla Trade Secrets within the meaning of Cal. Civ.

7  Code § 3426.1(b) by, *inter alia*, knowingly acquiring the Tesla Trade Secrets through improper

8  means, and disclosing and/or using the Tesla Trade secrets without Tesla's express or implied

9  consent.

10    55.    Defendant knew or had reason to know that, at the time he accessed, downloaded

11  and used the Tesla Trade Secrets, this information was acquired and obtained by improper means

12  and/or under circumstances giving rise to a duty to maintain secrecy or limit use, and that he did

13  not have Tesla's express or implied consent to do so.

14    56.    Defendant acquired the Tesla Trade Secrets by virtue of his employment with Tesla,

15  not through his own independent research and efforts, in direct violation of his legal obligations to

16  Tesla.

17    57.    On information and belief, Defendant failed to fully delete or return the Tesla Trade

18  Secrets that he misappropriated, and continues to use or disclose the Tesla Trade Secrets without

19  Tesla's consent.

20    58.    On information and belief, Defendant has gained, or will gain, substantial benefit

21  from his misappropriation of the Tesla Trade Secrets, to Tesla's substantial detriment.

22    59.    As a result of Defendant's unlawful conduct, the Tesla Trade Secrets have been

23  compromised, and Tesla is substantially threatened by Defendant's further use and/or

24  dissemination of that information.

25    60.    As a direct, proximate, and foreseeable result of Defendant's misappropriation of

26  the Tesla Trade Secrets, Plaintiff has been damaged in an amount not yet ascertained.

27    61.    Defendant's unlawful actions were willful and malicious, and with the deliberate

28  intent to injure Tesla's business, thereby entitling Tesla to exemplary damages pursuant to Cal.

1  Civ. Code § 3426.3(c) and/or attorneys' fees in an amount to be proven at trial pursuant to Cal.

2  Civ. Code § 3246.4.

3       62.     Tesla is entitled to an order requiring Defendant, his agents, and all persons acting

4  in concert with him, from using or disclosing, or threatening to use or disclose, the Tesla Trade

5  Secrets, and restraining Defendant from obtaining any benefit from his wrongful possession and

6  use of the Tesla Trade Secrets.  Unless enjoined by this Court, said misappropriation of the Tesla

7  Trade Secrets, actual or threatened, will cause great and irreparable injury to Tesla.  Tesla has no

8  adequate or other remedy at law for such acts and threatened acts.

9  **Third Cause of Action**

10  **(Breach of Contract)**

11       63.     Tesla re-alleges and incorporates by reference each and every allegation contained

12  in paragraphs 1 through 62 of this Complaint.

13       64.     As a condition of his employment with Tesla, Defendant signed and agreed to abide

14  by the terms of the NDAs between himself and Tesla, which prohibited Defendant from, among

15  other things, using or disclosing the Tesla Trade Secrets.

16       65.     Tesla fully complied with and fulfilled its obligation under the NDAs by, among

17  other things, employing Defendant.

18       66.     While employed by Tesla, Defendant breached the NDAs by, without

19  authorization, accessing, downloading, transmitting, creating, and retaining files containing the

20  Tesla Trade Secrets on a personal device.

21       67.     Tesla has sustained and will sustain damages as a direct and proximate result of

22  Defendant's breach of contract.

23  **PRAYER FOR RELIEF**

24       WHEREFORE, Plaintiff Tesla prays for judgment in its favor and against Defendant

25  Alexander Yatskov, inclusive as follows:

26       1.     Granting temporary, preliminary, and permanent injunctive relief against

27  Defendant, and any persons in active concert or participation with him: (i) enjoining Defendant

28  from obtaining, retaining, using, transmitting, disseminating, or disclosing the Tesla Trade Secrets;

1   (ii) requiring Defendant to immediately return all Tesla equipment, tangible materials, and

2   information that remain in Defendant's possession, custody, or control; (iii) ordering Defendant to

3   identify, and turn over, any property in his possession, custody, or control containing or reflecting

4   the Tesla Trade Secrets, including hard copy documents or any form of electronic storage media;

5   (iv) ordering Defendant to identify any other persons, entities, or locations not within his

6   possession, custody, or control, to which Defendant has transmitted, disseminated, disclosed, or

7   stored any Tesla Trade Secrets; and (v) any other appropriate injunctive relief;

8        2.     Awarding compensatory damages in an amount to be determined at trial;

9        3.     Awarding exemplary damages in an amount to be determined at trial;

10       4.     Awarding interest at the maximum legal rate on all sums awarded;

11       5.     Awarding reasonable attorneys' fees as permitted by law;

12       6.     Awarding all costs of suit herein; and

13       7.     Awarding such other and further relief as the Court deems just and proper.

14  **JURY DEMAND**

15       Plaintiff Tesla demands a jury trial on all triable issues.

16

17  Dated:  May 6, 2022                   */s/ Joseph C. Alm*
                                                         JOSEPH C. ALM, SBN 294362

18

19                                                Tesla, Inc.
                                              901 Page Avenue

20                                                Fremont, CA 94538-734
                                              Email: jalm@tesla.com

21                                                Phone: (650) 681-5000

22

23

24

25

26

27

28

COMPLAINT                               -12-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHARLES GRAVES, SBN 197923
Email: tgraves.@wsgr.com
JORDAN R. JAFFE, SBN 254886
Email: jjaffe@wsgr.com
JAMIE OTTO, SBN 295099
Email:  jotto@wsgr.com
MIKAELA BURKHARDT, SBN 328112
Email:  mburkhardt@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone:       (415) 947-2000
Facsimile:       (415) 947-2099

Attorneys for Plaintiff
Tesla, Inc.

COMPLAINT

-13-