JOHN C. KIRKE, #175055
jkirke@donahue.com
KATHARINE L. MALONE, #290884
kmalone@Donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California  94612-3520
Telephone:     (510) 451-3300
Facsimile:      (510) 451-1527

Attorneys for Defendant
ALEXANDER YATSKOV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TESLA, INC.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ALEXANDER YATSKOV,<br><br>　　　　　　Defendant. | Case No. 5:22-cv-2725-JD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF TESLA, INC.'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE PRELIMIARY INJUNCTION, AND EVIDENCE PERSERVATION ORDER**<br><br>Date:　May 16, 2022<br>Time:　1:30 p.m.<br>Ctrm.:　11<br>Judge: James Donato<br><br>Complaint Filed: May 6, 2022 |

**TABLE OF CONTENTS**

Page

INTRODUCTION……………………………………………………………………..…1

STATEMENT OF FACTS……………………………………………………..………...1

AUTHORITY AND ARGUMENT…………………………………………..……….6

    I. TESLA HAS NOT DEMONSTRATED IT IS ENTITLED TO THE
    EXTRAORDINARY RELIEF REQUESTED…………………………..……….6

    A. There is No Likelihood of Irreparable Harm………………..…………..………6

    B. Tesla Is Not Likely to Succeed on the Merits………………………………..……..7

        1. Tesla Failed to Establish that Trade Secrets Exist……………....….…...…….8

        2. Yatskov Has Not Misappropriated Tesla's Information……….…….…....9

    C. Both the Balance of Equities and Public Interest Favor Denial of the TRO….…..11

    II. EXPEDITED DISCOVERY IS NOT WARRANTED……………………….…....12

CONCLUSION………………………………………………………………………………13

- 1 -  5:22-CV-2725
MPA IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR TRO, ORDER OT SHOW CAUSE RE PI,
AND EVIDENCE PRESERVATION ORDER

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

# **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-
MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018)……………………..….8

*Comet Technologies United States of America Inc. v. Beuerman*,
Case No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018)…………...10, 12

*Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399 (9th Cir. 1993)……………………………..…..6

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD,
2013 U.S. Dist., LEXIS 70098, at *26-34 (E.D. Cal. May 16, 2013)………………….…11

*Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 191 F.Supp.3d 1072
(N.D. Cal. June 10, 2016)………………………………………………………..…..11

*Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161 (9th Cir. 1998)……………….…..…8

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
415 U.S. 423 (1974)………………………………………………………………...6

*Luna v. Girgis*, No. 221CV09765RGKAFM, 2022 WL 423411 (C.D. Cal. Jan. 11, 2022)…….6, 7

*Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079 (E.D. Cal Mar. 21, 2012)……..…10

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002)………………….12

*Tesla, Inc. v. Khatilov*, No. 4:21-CV-00528-YGR, 2021 WL 624174
(N.D. Cal. Jan. 22, 2021)…………………………………………………………………..9

*Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464
(N.D. Cal. Dec. 20, 2018)……………………………………………………………………8

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)………………………………6, 11

**Statues**

18 U.S.C. § 1839……………………………………………………………………….9

Cal. Civ. Code § 3426.1…………………………………..………………………………..7, 8

# INTRODUCTION

Plaintiff Tesla Inc.'s Application for Temporary Restraining Order is completely unnecessary. Tesla seeks the return of materials that Defendant Alexander Yatskov had already tried to return. Specifically, on May 2, 2022, Yatskov asked Tesla for a shipping label to return the laptop issued to him by Tesla and other Tesla materials in his possession. Yatskov did not receive a response to that email. At 5:00 p.m. on May 6—Yatskov 's last day at Tesla—he received an email containing instructions on how to return Tesla materials and thanking him for his service. Unfortunately, Tesla *already had sued* Yatskov earlier in the day, without having given him any opportunity to return the materials. Yatskov provided the Tesla laptop and materials to counsel on May 9, and the materials were forwarded to Tesla's counsel on May 10.

Tesla does not satisfy any of the requirements to obtain a TRO, particularly the mandatory injunctive relief that it seeks. Tesla has not identified any trade secret at issue, nor has it explained how Yatskov misappropriated any trade secret. He still was employed at the time Tesla sued him and therefore was entitled to be in possession of any materials in question. Further, Tesla will not suffer any harm at all, much less irreparable harm. Yakstov does not possess any Tesla trade secrets and is not in possession of any Tesla property. The balancing of the equities clearly favors Yatskov, who is being prevented from being employed elsewhere (at a non-competitor of Tesla) due to Tesla's overreach and abuse of the litigation process. The Court should deny Tesla's application.

# STATEMENT OF FACTS

Yatskov was born in Minsk in the Belarus Republic in the Union of Soviet Socialist Republics and then lived in Moscow, Russia. He fled to the United States during the 1991 Soviet coup d'état attempt. Declaration of Alexander Yatskov ("Yatskov Declaration"), ¶ 2. His first language is Russian, and although he has worked hard to make English his second language, he has difficulty speaking and understanding English outside of engineering contexts. *Id*. Yatskov has an M.S. in Machine Tools & Technology of Machine Building from Tver State Technical University, a Ph.D. in Machine Design from Moscow State Technological University Stankin in

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

- 1 -                                                                                                       5:22-CV-2725
MPA IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR TRO, ORDER OT SHOW CAUSE RE PI,
AND EVIDENCE PRESERVATION ORDER

Russia, and an M.S. in Engineering Management from Tuft University. *Id.* ¶ 3. Yatskov is an expert in thermal engineering with decades of experience with cooling systems for supercomputers and data centers. *Id.* ¶¶ 4-6.

Yatskov was recruited by Tesla in December 2021. *Id.* ¶ 6. He was interested in working on batteries and related cooling systems on the automotive side of the business, but Tesla asked him to work on the liquid cooling system for Project Dojo, its supercomputer project. *Id.* He explained multiple times during the interview process and his employment that he was an expert in *refrigerant* cooling for supercomputers and data centers – not liquid cooling.[1] *Id.* When Yatskov explained why he disfavored water cooling systems, his interviewer responded that his experience could help Tesla, which was building a supercomputer for the first time. *Id.*

Despite Yatskov's repeated requests for a formal job description, he was not given one. *Id.* ¶ 7. Instead he was told that Tesla does not give job descriptions because they can change, that Tesla would keep him busy, and that the information was confidential. *Id.* Yatskov ultimately accepted a job as Principal Thermal Engineer. *Id.* Elon Musk signed his employment agreement, and his supervisor, Aydin Nabovati, told him that Musk was personally involved with the project and had approved his job offer. *Id.*

Yatskov's first day with Tesla was Monday, February 14, 2022. *Id.* ¶ 8. Tesla gave him a laptop, and told him to use his personal phone for work. *Id.* Tesla offered a hybrid schedule, and Yakstov usually worked remotely. *Id.* His supervisor, Nabovati, was based in Canada and did not come to the office when Yatskov worked for Tesla. *Id.* Once hired, Yakstov was instructed to "dig into" Project Dojo and specifically told to discover problems with the liquid cooling system that Tesla designed, built, and installed before he joined the company. *Id.* ¶ 9. This system previously was presented to the public on Tesla's AI Day on August 19, 2021. Exhibit A to the Yatskov Declaration is a screenshot of the presentation from YouTube.

Yatskov immediately identified several problems with the existing cooling system with the unsophisticated system. *Id.* ¶ 10. Nabovati asked him to create a list of the problems, many of

---

[1] Decades before he joined Tesla, Yatskov "learned the hard way" that liquid cooling systems created more problems (with electrogalvanic corrosion and slime in cooling lines) than it solved for supercomputers. *Id.* ¶ 5.

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

which should have and would have been addressed at the outset by engineers experienced in cooling supercomputers. *Id.* After submitting his assessment, Tesla told Yatskov to come up with solutions to the problems identified, which amounted to overhauling the entire liquid cooling system in a very short period of time. *Id.* ¶ 11. This was a project that would have been overwhelming under even the best circumstances, but Yakstov was further stymied by a supervisor who routinely belittled his contributions. *Id.* ¶ 11. Despite these challenges, Yakstov hoped that his expertise could solve the problem where Tesla had failed and eventually proposed a redesign that would have eliminated the risk of leaks. *Id.* To Yatskov's knowledge, this proposed redesign was not adopted. *Id.*

Yatskov's next assignment required him to use two different software programs—one for computer-aided design ("CAD") and one for computational fluid dynamics analysis ("CFD"). *Id.* ¶ 12. Yatskov was unfamiliar with the specific CAD program used by Tesla and was never given training on how to use it, despite repeatedly asking for training, which is standard at other similar companies. *Id.* Yatskov also quickly discovered that he effectively could not use Tesla's CFD program, which was stored in the cloud on a server (as opposed to being stored locally on a computer) and thus had latency issues that only got worse when other Tesla employees were using the server. *Id.* These problems were compounded by the cheap laptop Tesla provided, which had constant problems connecting to Tesla's server and was not powerful enough to run the CFD program locally (which would have been the obvious solution). *Id.* ¶ 13. Yakstov informed his supervisor that it was impossible for him to complete his project with the equipment and tools provided and asked for new equipment or other accommodations. Tesla denied his requests. *Id.* ¶ 14.

Faced with the intense demands of the project and a company which refused to give him the necessary equipment and tools, Yatskov decided to use the resources he had at his disposal. *Id.* ¶ 15. Yatskov worked on his own high speed Dell laptop, which had a CFD program on it already. *Id.* While working on the Dell laptop, he did not transfer data *from* Tesla *to* the Dell laptop. *Id.* He was doing brand new work from scratch on the Dell laptop and then transferring the work to Tesla's server when it was complete and deleting the files from the Dell laptop. *Id.*

When Yatskov was later placed on administrative leave, there were about sixteen files on the Dell laptop that had not yet been moved to Tesla's server. *Id.* Yatskov did not use the Tesla files on his personal laptop after was placed on administrative leave. *Id.*

Yatskov's computer troubles continued. In April, his Tesla laptop was being repaired, but Tesla did not give him a replacement to use in the meantime. *Id.* ¶ 16. His supervisor called him to ask how he was doing his work. *Id.* Yatskov explained that he did not have a laptop or access to Tesla's tools and offered to keep working on the project on his older personal laptop (not the Dell laptop), which had a CAD program on it already. *Id.* His supervisor told him not to, so Yatskov confirmed that he would not and started sketching the next steps of the project with a pen and paper, as he had no other options. *Id.*

Shortly after this conversation with his supervisor, Tesla asked Yatskov to come in for an interview and to bring his devices. *Id.* ¶ 17. On April 27, 2022, Yatskov met with members of Tesla's HR department and brought his phone and the older laptop with the CAD program[2] to show that he had followed his supervisor's instructions and had not worked on it. *Id.* Yatskov permitted Tesla to make a copy of his phone and to inspect the laptop. *Id.* Tesla then placed him on paid administrative leave while it continued to look into the matter. *Id.*

A few days into his leave, on May 2, 2022, Yatskov met with HR to discuss his supervisor's behavior. *Id.* ¶ 18. Yatskov decided to resign from Tesla and explained to HR that he unhappy with my job, particularly with the toxic workplace created by his supervisor, and that he was frustrated that he was not allowed to do his job properly when he saw major problems with the liquid cooling system. *Id.* On May 2, 2022, Yatskov emailed HR to ask for a shipping label so that he could return Tesla's laptop and other materials, but he did not receive a response. The email is attached as Exhibit B to the Yatskov Declaration. *Id.* ¶ 19. Tesla did not fire Yatskov, an at-will employee. Yet Tesla, now seeks a TRO based on what it deemed not to be fireable offense.

Yatskov's last day with Tesla was May 6, 2022. *Id.* ¶ 20. There was no exit interview, which is customary at well-run organizations. At 5:00 p.m. PDT, Tesla sent him transition

---

[2] This is the laptop that Tesla erroneously and pejoratively refers to as a "dummy computer."

paperwork—including instructions for returning the Tesla laptop in the Hardware Return Guide—and a link to Tesla's Exit Survey, which thanked Yatskov for his contributions to Tesla. *Id.* Those documents, and his final pay stub, are attached as Exhibits C, D, and E to the Yatskov Declaration. One would never know from that HR email that Tesla had filed a lawsuit against Yatskov earlier that day while he still was employed by Tesla and after Yatskov had made inquiries about how to return Tesla's property.

Yatskov did not use or disseminate Tesla's data except as part of his job with Tesla. *Id.* ¶ 21. He does not intend to misappropriate anything from Tesla and does not intend to work for a competitor. *Id.* ¶ 22. Yatskov is not even aware of trade secrets that he learned or discovered at Tesla because the Project Dojo information he learned already had been made public by Tesla and Musk. *Id.* ¶ 23.

Yatskov was scheduled to start a new job on May 9, 2022, but his start date was delayed when he disclosed this litigation to his new employer—who is not a competitor of Tesla. *Id.* ¶ 24. This litigation—particularly a TRO—would impede his ability to support his family financially. *Id.*

Believing this all to be a big misunderstanding, on May 9, 2022, Yatskov, through his counsel, offered to resolve this matter by returning Tesla's materials and engaging an expert to analyze both laptops. Declaration of John C. Kirke ("Kirke Declaration"), ¶ 2. Tesla refused. *Id.* ¶ 3. That same day, Yatskov turned over the Tesla laptop, all Tesla hard copy materials (three notebooks and a set of drawings on paper), and his personal Dell laptop to his counsel. Yatskov Declaration, ¶ 21; Kirke Declaration, ¶ 4. Counsel placed the laptops in a secure location. Kirke Declaration, ¶ 4. On May 10, counsel sent the Tesla laptop, Yatskov's badge, and copies of the Tesla materials to Tesla's counsel. *Id.* ¶¶ 5-6. After further communication between counsel, Yatskov's counsel sent the original hard copies to Tesla's counsel on May 11. *Id.* ¶ 7. The Dell laptop remains locked in a secure location. *Id.* ¶ 10.

# AUTHORITY AND ARGUMENT

## I. TESLA HAS NOT DEMONSTRATED IT IS ENTITLED TO THE EXTRAORDINARY RELIEF REQUESTED

A temporary restraining order is intended to preserve the status quo and prevent irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only upon a clear showing that the plaintiff is entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The moving party must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *Id.* at 22. When a party seeks a mandatory injunction—an order that "commands a party to do some positive act"—the request "is subject to heightened scrutiny and [the injunction] should not be issued unless the facts and law clearly favor the moving party." *Luna v. Girgis*, No. 221CV09765RGKAFM, 2022 WL 423411, at *1 (C.D. Cal. Jan. 11, 2022) (quoting *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993)).

Tesla is not entitled to a TRO that will materially harm Yakstov and his family when its TRO reads like a list of the things it does not know: it does not know what information Yakskov "misappropriated;" whether that information is properly considered a trade secret; or how it might cause Tesla immediate and irreparable harm. Tesla's lack of particularity here, when combined with the fact that its lack of knowledge is the result of its own actions, is fatal. What *is* clear is that Tesla jumped the gun on filing a TRO, ignored Yatskov's attempts to return the materials they now seek to retrieve, and thus have far refused attempts by Yakskov's counsel voluntarily to participate in discovery substantively identical to the relief sought here because it would rather say it has a court order to punish Yatskov.

### A. There Is No Likelihood of Irreparable Harm.

Tesla's application should be denied because there is no likelihood of irreparable harm. There certainly is not enough harm sufficient to justify a TRO. Tesla claims that it "stands to

suffer injuries that cannot be repaired or quantified if the stolen trade secrets are further misappropriated." TRO Application at 11:1-2. Tesla's imaginary, hypothetical damages are irrelevant because any risk of Yatskov using the Tesla data in his possession on May 6th was neutralized the moment when Yatskov voluntarily turned over the two laptops and the papers to his counsel. Tesla's laptop and papers already have been returned to them. The Dell laptop is secured in a safe location. Counsel can delete the files and provide a declaration to that effect. The only thing that is holding up this process is Tesla.

In addition, Tesla's claim that it needs a TRO to protect itself from immediate harm is not credible. Documents submitted by Tesla show that Tesla knew that Yatskov was working on his own device as it was happening and chose not to fire him or file a trade secret suit against him. Exhibit A to Nabovati's Declaration is an email from Nabovati to Yatskov in which he wrote:

> As I had asked you multiple times before, please do not use Tesla files and information on any personal device, and please do not use software packages that are not authorized by Tesla InfoSec team. It is extremely concerning to me that you ignore my repeated message and keep using non authorized software and personal computer for doing design work on Project Dojo, which is of extreme confidential nature.

Working on a personal device may have been a poor decision, but that is not what this case is about. This case is about whether trade secrets were misappropriated, and this specific motion is about whether Tesla is in *immediate danger* of being harmed by such misappropriation. If Tesla believed that there was an urgent need to protect its data from Yatskov, it would have fired him and filed this suit much earlier. *Luna*, 2022 WL 423411, at *1 ("delay undercuts any assertion of irreparable harm"). Instead Tesla waited until after Yatskov informed Tesla that he intended to resign and only then brought this suit.

**B.     Tesla Is Not Likely to Succeed on the Merits.**

Tesla alleges that Yatskov misappropriated its confidential and trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.

The elements of trade secret misappropriation under DTSA and CUTSA are "essentially the same." *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018). To succeed on these claims, a plaintiff must allege: "(1) that it is the owner of a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that it was damaged by the defendant's actions." *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (quotations and citation omitted). Tesla has failed to establish that it is likely to success on the merits.

For the same reasons discussing in the preceding section, Tesla cannot establish any damage because any imaginable threat to Tesla has been neutralized. The Tesla laptop, badge, and notes were returned to Tesla. Yatskov turned over his personal laptop to his counsel for forensic review. Counsel for Yatskov has made it clear to Tesla that Yatskov will take reasonable measures to ensure that he has no other Tesla information in his possession. Tesla also cannot establish the other two element, for the reasons discussed below.

### 1. Tesla Failed to Establish That Trade Secrets Exist

A trade secret is defined as information that: (1) derives its economic value from not being generally known and (2) is subject to reasonable measures of secrecy by its owner. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quotations and citations omitted). Moreover, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Id.* at 1165.

Tesla readily cites the law on trade secrets, but it fails to explain what information Yatskov allegedly took and how they are trade secrets. The TRO Application heavily relies on Nabovati's declaration, which states that "[t]he information Yatskov took onto his personal devices to perform the thermal simulations ***must have included at least certain trade secrets***." Nabovati Declaration, ¶ 18. Tesla cannot carry its burden to identify a trade secret and describe it

with sufficient particularly by generally pointing to Project Dojo, particularly when so much information is publicly available.

On his personal Dell laptop, Yatskov was running CFD analyses. He was trying to solve a problem that had not yet been solved. In other words, Tesla is trying to claim that a problem without a solution is a secret and, moreover, that this lack of a solution derives independent economic value. Tesla's trade secret is the *absence* of a "formula, pattern, compilation, program, device, method, technique or process." While knowledge about what *not* to do may be valuable for other purposes, it is not the type of information envisioned by the statute.

Further, a great deal of information about Project Dojo is public knowledge. On AI Day, Tesla actually released an image of its cooling system showing what appear to be garden hoses and generic hardware, which is attached as Exhibit A to the Yatskov Declaration. Numerous engineers and news sources have written about and reported on Project Dojo. *See, e.g.*, Request for Judicial Notice, Exhibits 1-6.

### 2. Yatskov Has Not Misappropriated Tesla's Information

Tesla cannot show that Yakstov misappropriated the information alleged to be a trade secret. He had authorized access to Tesla's information as an employee and was using it solely for the purpose of completing his work assignments. Yatskov did not acquire any knowledge through an improper means, nor did he disclose it to anyone unauthorized. In contrast, the defendant in *Tesla, Inc. v. Khatilov*, No. 4:21-CV-00528-YGR, 2021 WL 624174 (N.D. Cal. Jan. 22, 2021), only worked for Tesla for two weeks, immediately began downloading thousands of files unrelated to his work and attempted to delete the files when confronted. Yatskov was just trying to do his job and is now trying to return or, with Tesla's approval, delete all of the Tesla information in his possession.

Even Tesla's declarations establish that Yakstov complied with the request to scan his phone and handed over his computer. This is not the behavior of someone attempting to steal secrets. It is the behavior of an overwhelmed and under-resourced employee—who speaks English as a second language—working on a difficult project and trying to avoid more

unwarranted criticism from a supervisor.

Doing work for Tesla on a personal device may not have been a good choice, but it is not the same as misappropriating trade secrets. Tesla placed Yatskov under an incredible amount of pressure to perform and to fix impossible problems with Project Dojo, but Tesla then completely failed to give him the resources he needed. Yakstov was clear from the outset that he needed a more powerful computer and either training or different tools. Yatskov's great sin was trying to get work done on a powerful personal device. The files on Yatskov's personal Dell laptop were files that he created from his own head while working for Tesla, just like the drawings he made with pen and paper when he did not have a laptop to use. This is confirmed by the Declaration of David Schertzer, who states that "Yatskov had frequently sent confidential Tesla information from a personal email account to his Tesla email address." Schertzer Dec., ¶ 3.

The so-called "dummy computer" is a red herring. Yatskov wanted to use his older, personal computer—the "dummy"—for CAD design when his Tesla laptop was being repaired. He asked for permission from his supervisor, who said no. Yatskov followed the instruction and worked on his design with old-fashioned pen and paper—a remarkable tool for a Tesla engineer to be forced to use in 2022. When Tesla later examined the "dummy" and found nothing on it, it was because no Tesla information had ever been on it.

The cases cited by Tesla to justify the requested order actually illustrate why a temporary restraining order is inappropriate here. The defendants in those cases all accessed and took the confidential information either in anticipation of, or after accepting employment with, *a direct competitor* to the former employer, a key factor that is not present here:

- In *Comet Technologies United States of America Inc. v. Beuerman*, Case No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018), the defendant downloaded the documents between receiving an offer from the movant's competitor, accepting that offer and leaving the employer from whom he was alleged to have stolen trade secrets.

- In *Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079 (E.D. Cal Mar. 21, 2012), shortly before moving to a competitor, the defendant downloaded and printed confidential and proprietary forms created and owned by his then-employer. In discussions with his

then-prospective new employer and PSI competitor, defendant projected that he could bring approximately $500,000–$600,000 in client revenue to the table, 70–80% of which would be attributable to existing PSI customers.

- Similarly, in *Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 191 F.Supp.3d 1072 (N.D. Cal. June 10, 2016), the defendant e-mailed and downloaded, to her personal devices, confidential information from the company before leaving her employment to work at a competitor.

- *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 U.S. Dist., LEXIS 70098, at *26-34 (E.D. Cal. May 16, 2013) once again involved defendants taking confidential information to directly compete, with an unfair advantage, against their former employer.

In contrast, Yatskov has not moved—and has no plans to move—to a Tesla competitor, and Yatskov has no clients or competitors.[3]

### C. Both The Balance of Equities and Public Interest Favor Denial of the TRO

Before injunctive relief may be imposed, the movant must demonstrate that the balance of equities tips in its favor. *Winter*, 55 U.S. at 20. And when exercising its discretion, a court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

The balance of the equities undoubtedly favors Yatskov. He still was an employee of Tesla when this lawsuit was filed. Before the lawsuit was filed, he tried to return Tesla's laptop and other materials, but no one from Tesla responded to him. Farcically, only after this lawsuit was filed—lawsuit that claims that Yatskov "refused" to return confidential information—did Tesla provide instructions on how to return its information. Since the lawsuit was filed, he has taken every step to resolve this matter and to comply with Tesla's wishes.

---

[3] While he has been offered employment, it is not with a competitor, and the TRO application, which he voluntarily disclosed to his new employer, already has delayed his original May 9, 2022 start date, *see supra*.

1    Yet Yatskov has been publicly branded a thief and a liar by Tesla. This action has been
2    covered by press around the world. Yatskov had a new job lined up, but his start date has been
3    indefinitely delayed because of this action. It is Yatskov who has been irreparably harmed, not
4    Tesla. Tesla's desire to protect its confidential data is understandable, but a company should
5    engage in overzealous litigation that only serves to destroy reputations and waste the Court's
6    time. In contrast, Yatskov has had to delay his start date with a new employer due to the threat of
7    the restraining order hanging over his head, and with which he has already complied.

8    As for the public, it is true that "the public has a strong interest in ensuring trade secrets
9    are protected. Courts have recognized this strong public interest in the injunctive relief context."
10   *Comet*, 2018 WL 1990226, at *5 (collecting cases). Further, the public interest is not served by
11   granting unnecessary restraining orders. The only interest being served by granting this temporary
12   restraining order is Tesla's interest in harassing and scaring a recently departed employee.

13   **II.    EXPEDITED DISCOVERY IS NOT WARRANTED**

14   Tesla also seeks an order compelling expedited discovery. Specifically, Tesla requests: (1)
15   an immediate return of all Tesla property in his possession; (2) an identification of all other media
16   on which he stored Tesla's trade secrets; (3) the production of all such media for forensic
17   imaging; (4) provision of all login information needed to access that media; and (5) an
18   identification of any other persons, entities, or locations where Defendant may have disseminated
19   or disclosed Tesla's information. Courts may allow expedited discovery when there is "good
20   cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). There
21   is no good cause for expedited discovery here.

22   An order compelling this information is unnecessary because Yatskov's counsel has
23   already either provided or offered it, and on a timeline shorter than Tesla would receive it
24   pursuant to a discovery order. Counsel for Yatskov shipped all of the Tesla property in his
25   possession to Tesla's outside counsel on May 10. Counsel further identified and retains in secure
26   custody the Dell laptop. Counsel offered to jointly retain a forensic expert with Tesla to access
27   and examine these devices to put the question of whether Yatskov used or disseminated the files
28   to rest. Counsel also could delete the files and present a declaration. If the Court determines that

expedited discovery is warranted, however, Yatskov requests that he also be permitted to take expedited discovery so that he can defend himself as his case proceeds. Yatskov would be entitled to depose the Tesla declarants and Elon Musk, who signed Yatskov's employment agreement and apparently personally approved Yatsokv's hire. Tesla also should be ordered to preserve all evidence, including doing further work on Project Dojo's cooling system until the defendant can inspect it.

## CONCLUSION

This is an unfortunate case that could have been avoided if Tesla had not assumed malice. Yatskov may have exercised poor judgment at his job, but he does not deserve to be called a thief and a liar. As Tesla cannot establish the elements for a TRO—and particularly as Tesla faces no immediate harm—Tesla's application should be denied.

Dated: May 13, 2022

DONAHUE FITZGERALD LLP

By: _____
John C. Kirke
Katharine L. Malone

Attorneys for Defendant
Alexander Yatskov