UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| TESLA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) **NO. C 22-02725-JD** |
| | ) |
| ALEX YATSKOV, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

San Francisco, California
Thursday, June 2, 2022

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

TESLA, INC.
901 Page Avenue
Fremont, California 94538
BY: **JOSEPH C. ALM, ATTORNEY AT LAW**

For Defendant:

DONAHUE FITZGERALD LLP
1999 Harrison Street - 26th Floor
Oakland, California 94612
BY: **JOHN C. KIRKE, ATTORNEY AT LAW**
**KATHARINE MALONE, ATTORNEY AT LAW**
**HAYLEY LENAHAN, ATTORNEY AT LAW**

Reported By: Ruth Levine Ekhaus, RMR, RDR, FCRR
Official Reporter, CSR No. 12219

1   <u>Thursday - June 2, 2022</u>                    <u>10:13 a.m.</u>

2                   P R O C E E D I N G S

3                      ---o0o---

4       THE CLERK:  Calling Civil 22-2725, Tesla, Inc. versus

5   Yatskov.

6       Counsel?

7       MR. ALM:  Good morning, Your Honor.  Joseph Alm on

8   behalf of Tesla, together with Jordan Jaffe, also for Tesla.

9       MR. KIRKE:  Good morning, Your Honor.  John Kirke with

10  Katharine Malone and Hayley Lenahan for the defendant.

11      THE COURT:  Are you Mr. Alm?

12      MR. KIRKE:  Yes, Your Honor.

13      THE COURT:  A-l-m; right?

14      MR. ALM:  Yes, Your Honor.

15      THE COURT:  Okay.  All right.

16      Well, I can't remember why we're here.  Is this just a

17  check-in?

18      MR. ALM:  Yeah.  There was a TRO application two weeks

19  ago.

20      THE COURT:  Yes.

21      MR. ALM:  We arranged to do depositions --

22      THE COURT:  Oh, yes.  What's happening?

23      MR. ALM:  -- and the imaging.  And I was optimistic --

24      THE COURT:  You got all that done; the computer, the

25  forensic review and all that?

1          **MR. ALM:**  Yes, Your Honor.

2      So we had the deposition of Yatskov two days ago.

3          **THE COURT:**  Oh, you did?

4          **MR. ALM:**  Yes.

5          **THE COURT:**  Okay.

6          **MR. ALM:**  And in that he confirmed that, contrary to

7  his declaration, he did transfer information from Tesla to his

8  personal devices via e-mail.

9          **THE COURT:**  Did you find them on the laptop?

10         **MR. ALM:**  So we found some of the sensitive files on

11 his laptop.

12     Now, the problem is we can't connect them to the e-mail

13 because what we have is we have e-mail, basically, title, and

14 sent dates, but we don't have the content of the e-mail.

15         **THE COURT:**  Oh.  Why is that?

16         **MR. ALM:**  And so we asked counsel to provide us access

17 to the e-mail, since he -- you know, after Mr. Yatskov

18 confirmed that he had, in fact, sent information there -- and

19 counsel declined that.

20     So, you know, at this point --

21         **THE COURT:**  Declined?  You're not going to produce the

22 e-mails?

23         **MR. KIRKE:**  Your Honor, of course, we'll produce the

24 e-mails.

25     May I respond to --

# PROCEEDINGS

1    THE COURT:  Well --

2    MR. KIRKE:  -- what he testified about?

3    THE COURT:  Let me get the full picture from Mr. Alm.

4    MR. ALM:  Yes, Your Honor.

5    THE COURT:  So you're getting the e-mails.  Okay.

6    MR. ALM:  Yes, Your Honor.  Thank you.

7    The only other thing that I was just going to mention is

8  he does currently have access to that -- he confirmed that --

9  the e-mails.

10    And then the only other things that came out that were,

11  you know, issues that we were sensitive to were, there is a USB

12  plug-in and a Seagate hardware -- or external hard drive.  The

13  Seagate hard drive, I don't think is an issue for Your Honor --

14    (Reporter interrupts for clarification of the record.)

15    MR. ALM:  I am so sorry.

16    THE COURT:  You might want to actually get a little

17  closer to the mic.  Just pull it closer to you.  I'm having a

18  little trouble hearing you.

19    MR. ALM:  Yes, Your Honor.  Let me not try to speed

20  through things as much.

21    So the Seagate hard drive we have imaged; nonissue.  But

22  the USB, which was plugged in, we don't.

23    THE COURT:  Okay.

24    MR. ALM:  And so we can't have the records of -- if

25  anything was on that.  So, you know, we need that.

1    THE COURT:  You want the -- it's a thumb drive, a USB

2 drive?

3    MR. ALM:  Yes, Your Honor.

4    THE COURT:  All right.  Okay.

5    MR. ALM:  So it's the e-mail, the thumb drive, those

6 are the things that we really need in order to complete the --

7    THE COURT:  And the e-mail is just those e-mails that

8 he sent to himself?

9    MR. ALM:  Yes, Your Honor.

10    The only tweak to that and the real sensitive thing is

11 figuring out whether those were sent or -- you know, further

12 sent from his e-mail, basically getting visibility into whether

13 he forwarded them on --

14    THE COURT:  Oh.

15    MR. ALM:  -- or moved them around, or did anything

16 there.

17    THE COURT:  Okay.  All right.

18    Defendant?

19    MR. KIRKE:  Thank you, Your Honor.

20    Dr. Tesla or -- Dr. Tesla?  Dr. Yatskov testified under

21 oath that he --

22    THE COURT:  Dr. Tesla?  He's back.

23    MR. KIRKE:  Dr. Yatskov, testified under oath that he

24 did not --

25    THE COURT:  There was a Dr. Tesla at one point, but

1 anyway -- go ahead.

2    Dr. Yatskov.

3        **MR. KIRKE:**  Dr. Yatskov, he testified that he did not

4 transfer or share Tesla information with anyone outside of

5 Tesla.  He also testified that he used Tesla information on his

6 personal devices solely to work for Tesla.  Meanwhile -- and I

7 think this is important, Your Honor -- his supervisor was

8 forced to admit under oath --

9        **THE COURT:**  Oh, you deposed Mr. Nabovati?

10       **MR. KIRKE:**  I did, Your Honor.

11   And that's spelled N-A-B-O-V-A-T-I.

12       **THE COURT:**  Right.

13       **MR. KIRKE:**  He was forced to admit under oath that he

14 uses a personal device.  And moreover, he supervises 10 people,

15 and as far as he knows, they use personal devices.  He also was

16 forced to admit that Tesla doesn't have a written policy

17 prohibiting or regarding the use of personal devices.

18   So there was nothing -- there is nothing nefarious here.

19   When we came in for the TRO application, the Court said:

20 Look, you can ask him under oath, "What did he disclose?  Who

21 did he give it to?"

22   They have had that opportunity.  They deposed him for over

23 two hours.  They have the Tesla laptop that was issued to him.

24 They have the personal Dell laptop.  And yesterday they didn't

25 just ask:  Hey, can we have the e-mails?

1    Of course we'll produce the e-mails.

2    They want to do a forensic examination of his whole

3  computer network, get into more of his personal materials, and

4  essentially get a search warrant.  That --

5        **THE COURT:**  Well, I think, that may be so.  But I

6  think all I'm hearing now is just those e-mails that he sent

7  from -- what is it -- from his Tesla account -- is that what

8  you're talking about -- to his personal account --

9        **MR. ALM:**  Yes, Your Honor.

10        **THE COURT:**  And you know exactly which e-mails those

11  are?

12        **MR. ALM:**  So we don't.  We -- he said there were

13  seven.

14        **THE COURT:**  Okay.  Do you know the time period?

15        **MR. ALM:**  I mean, the time period in which he was

16  employed is pretty narrow, and the time period, I think, would

17  be -- we believe is April, I think.

18        **THE COURT:**  Okay.

19        **MR. ALM:**  Although --

20        **THE COURT:**  Just produce any e-mails he sent to

21  himself while he -- you know, from his Tesla account to his

22  personal account during his employment period.  That should

23  cover it.

24    And I think that's it.  I mean, what else is there?

25  What's left after that?

1    I mean, so far you have some assurance now that it hasn't

2    been misused.  Can we wrap it up after the e-mails?  If you

3    look at the e-mails, and you don't see any evidence that they

4    were forwarded, then we're done or -- what happens next?

5         **MR. ALM:**  Yes, Your Honor.

6    The only thing we'd want is we want access records for his

7    e-mail, for his personal e-mail.  Because it's basically

8    figuring out:  Was he accessing this from other devices that he

9    could pull it off.

10   Right?

11   And I actually don't know if you can tell --

12        **THE COURT:**  Wait.  What are you asking for now?

13        **MR. ALM:**  Just the access records for his -- as part

14   of seeing these -- his e-mail, his personal e-mail, just seeing

15   basically which devices accessed that e-mail, at which time.

16   Because, if it's just his, you know, Dell laptop, then we have

17   the full records.  That's clean.  That's not difficult.

18        **THE COURT:**  How does that work?  I've never heard that

19   before.  How would you be able to tell that?

20        **MR. ALM:**  So I know that exists for Gmail.  I actually

21   don't know Fastmail, but they do have basically --

22        **THE COURT:**  It's Fastmail, F-A-S-T?

23        **MR. ALM:**  That's my memory, Your Honor.

24        **THE COURT:**  Oh, interesting.

25        **MR. ALM:**  But I actually haven't done this with

1  Fastmail before.  But it's normally you have devices --

2  basically, you can go into a section that shows which devices

3  accessed the e-mail account at which time, and that can allow

4  us to make sure that nothing was basically pulled off.

5       **THE COURT:**  In other words, you're worried that he

6  looked at it from a computer you don't know about?

7       **MR. ALM:**  Yeah.  What I'm worried about is that these

8  e-mails basically can be used or were used to take information,

9  and then that that information ends up anywhere other than the

10 Dell laptop.  If it's on the Dell laptop, I'm not concerned

11 because we have a forensic review of that.  But it's just

12 making sure that we have traced out where it goes.

13    I'm just trying to solve for the problem of, if they

14 produced just the e-mails and we don't know whether he passed

15 that information on further.  And I'm just trying to figure out

16 how to best build that trail.

17      **THE COURT:**  Did you ask him at his deposition?

18      **MR. ALM:**  Your Honor, we asked him about when he

19 basically -- when he sent information, and then what he was

20 using that information for.  And he said he was using it for

21 his Tesla work.

22      **THE COURT:**  I understand that, but did you ask him:

23 Once you sent it to your personal account, did you send it

24 anywhere else?

25    Did you ask him that?

**PROCEEDINGS**

1       **MR. ALM:**  He had -- so we didn't ask him that specific

2    question.  He had testimony -- and I can pull it up exactly,

3    about sending from -- what was it? -- from myself to myself.

4       Here we go.  So question --

5       (Reporter interrupts for clarification of the record.)

6       **MR. ALM:**  I am so sorry.

7       He had a question (reading):

8       **"QUESTION:**  Sir, under oath, do you deny using your

9       personal e-mail for your work at Tesla?

10      And he answered (reading):

11      **"ANSWER:**  No.  As I said, I was sending my files to

12      translate information from myself to myself to Tesla."

13      **THE COURT:**  I just -- I mean, when you had him under

14   oath, you didn't ask him:  Did you send the e-mail -- or did

15   you send the information anywhere else?

16      You didn't ask him that?

17      **MR. ALM:**  Your Honor, I think we asked him that.  I

18   don't -- I believe he testified he did not send it on --

19      **THE COURT:**  All right.  So he said no, so -- he said

20   no, and you don't have any evidence that he did.

21      I'm okay with the e-mails, you know, the accessing

22   devices.  There is an intrusiveness point.  We talked about it

23   last time.

24      I will tell you, I know Fastmail; it's an Australian

25   hosting site.  And it's popular with people because it follows

**PROCEEDINGS**

1  much tighter privacy protocols than U.S.-hosted sites do.  But

2  I don't know whether they keep track of this.  I can tell you,

3  from my interactions with Fastmail, I've never seen it, but it

4  doesn't mean that -- I've never looked.

5       Let's just do the e-mails and then look them over, and

6  after that, I think, you can probably call it a day.  It

7  doesn't seem like -- and now, how many weeks -- it's been about

8  four weeks now since he's left employment.  Something like

9  that?

10          **MR. ALM:**  I believe three weeks -- I believe that's

11  correct.

12          **THE COURT:**  Three or four weeks, roughly?

13          **MR. ALM:**  Yeah.

14          **THE COURT:**  Okay.  All right.

15       Why don't you look at the e-mails and we'll be done,

16  right; I mean, if you don't see anything that causes concern.

17       And, of course, he always has -- your client, Mr. Yatskov,

18  always has his standing obligation, he can't reveal anything

19  that he acquired as proprietary information at Tesla.  He knows

20  that, and that's going to be ongoing.

21       And that should be it; right?

22          **MR. ALM:**  Yes, Your Honor.

23       And there is one thing I have to say, just to clarify for

24  the record so this isn't used in future cases --

25          **THE COURT:**  Sure.

**PROCEEDINGS**

1    **MR. ALM:**  -- again, because opposing counsel said that

2  Mr. Nabovati said that Tesla -- all of his Tesla people use

3  personal devices.  In fact, what he testified to was about cell

4  phones.  And he also testified to the endpoint protection that

5  we have on those.

6         **THE COURT:**  Well, you can litigate that the next time.

7         **MR. ALM:**  Yes, Your Honor.

8         **THE COURT:**  Not this time.

9     Anything else, Defendants?

10        **MR. KIRKE:**  No.

11        **THE COURT:**  I think the end is near.

12    When can you get those e-mails to Mr. Alm?

13        **MR. KIRKE:**  If I could have a few days, I think.

14        **THE COURT:**  Sure.  How about -- what is today,

15  Thursday?  How about a week from today or by a week from

16  tomorrow; how about that?

17        **MR. KIRKE:**  That's fine.  Thank you, Your Honor.

18        **THE COURT:**  Is that going to work?  Okay.

19        **MR. ALM:**  That works.  Just to clarify, on the USB

20  drive, just imaging.

21        **THE COURT:**  There is no evidence right now that

22  anything was on the USB drive; right?  So we're going to skip

23  that.

24     If you ever find any evidence anything was on there, I'll

25  be happy to consider it.  But, you know, there is no evidence

1  from the deposition.  If you see anything in the e-mail, you

2  can let me know, but for right now, nothing on the USB drive.

3            **MR. ALM:**  Understood, Your Honor.

4          **THE COURT:**  All right.  Thanks for coming in.

5          **MR. KIRKE:**  All right.  Thank you, Your Honor.

6            (Proceedings adjourned at 10:25 a.m.)

7                        ---o0o---

8

9                **CERTIFICATE OF REPORTER**

10            I certify that the foregoing is a correct transcript

11  from the record of proceedings in the above-entitled matter.

12

13  DATE:   Monday, June 6, 2022

14

15

16

17

18  _____
      Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
19            Official Reporter, U.S. District Court

20

21

22

23

24

25