1  JOHN C. KIRKE, #175055
   jkirke@donahue.com
2  KATHARINE L. MALONE, #290884
   kmalone@donahue.com
3  HAYLEY M. LENAHAN, #343528
   hlenahan@donahue.com
4  DONAHUE FITZGERALD LLP
   Attorneys at Law
5  1999 Harrison Street, 26th Floor
   Oakland, California  94612-3520
6  Telephone:    (510) 451-3300
   Facsimile:    (510) 451-1527

7
   Attorneys for Defendant
8  ALEXANDER YATSKOV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TESLA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDER YATSKOV, <br><br> Defendant. | Case No. 3:22-CV-02725-JD <br><br> **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS I AND II** <br><br> Date: June 30, 2022 <br> Time: 10:00 a.m. <br> Ctrm: 11 <br> Judge: James Donato |

# INTRODUCTION

In its Complaint, Tesla wove a tale of deception and espionage straight out of a John le Carré novel. The story, coupled with spurious personal attacks calculated to destroy Yatskov's integrity publicly, created a three-ring circus around Yatskov and ruined his reputation. When examined more closely, Tesla's version of events requires so many illogical leaps that the story is not plausible. Supposition is not a substitute for facts. The alleged *facts* are that Tesla sued a current employee for having "trade secrets" on a personal device even though Tesla gave the employee access to the trade secrets to do his job and can identify no written policy banning the use of personal devices to do work. While the more likely and reasonable explanation is that there was a communication breakdown between Tesla and Yatskov, Tesla instead jumped to the worst conclusions and sued Yatskov before he was even out the door. An employee's alleged failure to cooperate with an internal investigation at a dysfunctional company does not constitute misappropriation. Accordingly, the Court should grant Yatskov's Motion To Dismiss Counts I and II (the "Motion").

# LEGAL ANALYSIS

### A.   Tesla's Reliance on Facts Outside of the Complaint Is Not Persuasive

The posture of this case places the parties in an unusual situation. While the motion for a temporary restraining order has been pending, the parties have engaged in limited discovery that has shed light on the true facts of this case. Regardless, Yatskov acknowledges that the Court must accept all "well pleaded" allegations in the Complaint as true, even if Yatskov does not agree with Tesla's version of events. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 876 (N.D. Cal. 2018). For that reason, in the first two paragraphs of the Statement of Facts, Yatskov provided a neutral summary of the facts, free of inflammatory language and supposition, with citations to Tesla's Complaint.

In contrast, in its Opposition to Motion to Dismiss ("Opposition"), Tesla cites to facts outside of the Complaint without compunction. For example, Tesla claims that the company has rules about using personal devices at work though that fact is not alleged in the Complaint. *Compare*

Opposition at 3:13-14 *with* Complaint at ¶ 4.[1] Tesla also claims that Yatskov "retained – and failed to return – a personal computer containing trade secret Tesla files after his resignation," which is not alleged in the Complaint. *Compare* Opposition at 3:10-12 *with* Complaint at ¶ 7.[2] If Tesla wished to cite to facts outside of its Complaint, then it should have amended the Complaint under Rule 15 instead of filing its Opposition.[3]

Again, Yatskov recognizes that a motion to dismiss is not the time for Yatskov to establish how wrong Tesla is about the facts. Even if the facts pleaded by Tesla were correct, however, Tesla still would not have misappropriation claims against Yatskov.

### B.  The Facts Do Not Support a Misappropriation Claim

#### 1.  Tesla's Misappropriation Allegations Rely on Unreasonable Inferences and Legal Conclusions Disguised as Facts

As discussed in greater detail in the Motion, Tesla's Complaint should be dismissed because Tesla's Complaint contains absolutely no facts to support the claim that Yatskov used or disclosed Tesla's trade secrets. *See* Motion at 6-7. The Complaint also fails to plead sufficiently that Yatskov improperly acquired Tesla's trade secrets.[4] *See id.* at 5-6. In short, Yatskov appropriately accessed

---

[1] In his deposition, Tesla's representative testified that Tesla does not have a written policy on using personal devices and that, as far as he knows, everyone on his team uses personal devices for Tesla work.

[2] Tesla is aware of this computer because Yatskov offered to have it forensically searched and cleaned right after the lawsuit was filed. The laptop was later thoroughly searched by a third-party expert selected by Tesla. Yatskov allowed Tesla's counsel to examine and remove any files it wished. The laptop is now being returned to Yatskov

[3] Since the case was filed, (i) Tesla obtained Yatskov's Tesla laptop and his written notes; (ii) a third-party forensic expert examined Yatskov's personal computer and produced reports to Tesla's counsel; (iii) Tesla questioned Yatskov under oath for over two hours; and (iv) Yatskov's personal email was searched. Further, Tesla itself admits in footnote 2 of the Opposition that its "TRO papers . . . contains a wealth of factual declarations," information that Tesla did not think important enough to incorporate into its Complaint.

[4] In its first footnote, Tesla asserts that it also pleaded "threatened" misappropriation. Apart from generally claiming that there is a threat of future use, Tesla did not make a claim for threatened misappropriation, only actual misappropriation. Complaint at ¶¶ 41, 51. Tesla claims that the "threat" stems from Yatskov's alleged refusal to return Tesla's "trade secrets." Threatened misappropriation, however, "means a threat by a defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates imminent misuse." *S. California Inst. of L. v. TCS Educ. Sys.*, No. CV 10-8026 PSG AJWX, 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011). Tesla does not allege any evidence showing "imminent misuse."

Tesla's information as part of his job; the lawsuit was filed while he was still employed by Tesla. Yatskov permissibly acquired any trade secrets while working at Tesla. Opposition at 3:19-4:1.

Tesla's reliance on inapposite cases from other jurisdictions does not persuade. In *Trench Tech International, Inc. v. Tech Con Trenching, Inc.*, the court ruled that a jury *might* find that an employee storing company files on a personal device in violation of a clear policy was an acquisition by improper means. No. 4:19-CV-00201-O, 2022 WL 1998466, at *10 (N.D. Tex. June 6, 2022). In Tesla's other cited case, *PTP OneClick, LLC v. Avalara, Inc.*, a company shared trade secrets with another business under a confidentiality agreement when the companies were contemplating a business deal; the agreement required the business to return or destroy materials shared with it. No. C19-0640JLR, 2020 WL 4729174, at *1-2 (W.D. Wash. May 27, 2020). The trade secret owner alleges that the other company failed to return or destroy the materials when the deal did not go forward. *Id.* at *2. The court granted a motion for summary judgment because the limitations period had expired, not addressing the merits of the case, and found that the limitations period started to run when the alleged breach took place. *Id.* at *1. Tesla has not identified a specific agreement provision or policy that Yatskov violated. As Tesla's lawyers now know, Tesla does not have a written policy prohibiting or limiting the use of personal devices.

This case is more akin to *Angel Oak Mortg. Sols. LLC v. Mastronardi*, No. 1:20-CV-4583-MLB, 2022 WL 875910 (N.D. Ga. Mar. 23, 2022). There, the court granted a motion to dismiss an employer's misappropriation claims under remarkably similar circumstances. 2022 WL 875910, at *7-8. The employer claimed a former employee acquired trade secrets emailing information from his work email account to his personal email account. *Id.* at *7. Just like Tesla, the employer claimed this constituted "improper means" because the emails breached an agreement that required the employee not to disclose trade secrets and to return all materials upon termination. *Id.* The court found, as a matter of law, that those allegations could not support a misappropriation claim based on acquisition by improper means:

> Plaintiff does not explain, and the Court does not see, how Defendant Friedberg violated these provisions by sending business information to his personal email account during his employment with Plaintiff. **Doing so did not "disclose" the**

> information, "divulge" it, or "publish [it] to others"—Defendant Friedberg simply sent himself information to which he already had access as Plaintiff's Inside Account Executive. . . And moving information from one storage location to another—both controlled by the same person—does not "use or apply" that information within the ordinary meaning of those words. You do not "use or apply" a product when you move it from the attic to the basement.
>
> The other provision requires Defendant Friedberg to return Plaintiff's confidential information at Plaintiff's request or upon termination of his employment. **But this obligation says nothing about whether Defendant Friedberg can send himself information in the first place;** it only demands that he give it back later. And, even if Defendant Friedberg did fail to give it back when required (which is not Plaintiff's theory), this would amount to improper retention, not improper acquisition. Thus, Defendant Friedberg's self-emails did not violate the provision about returning information and, even if he engaged in other conduct that did, that conduct was not the "means" by which he "acquired" Plaintiff's information. Either way, the provision does not support a claim under DTSA or GTSA.

*Id.* at *7 (emphasis added); *see also Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011) (finding no misappropriation because information was acquired according to the terms of agreement).

Tesla's only other rebuttal to Yatskov's arguments is to claim that the Motion "omits any mention" of its "key allegation" regarding his meeting at Tesla while he was still employed at Tesla. Opposition at 1:3-7. As a matter of fact, Yatskov did address his meeting with Tesla. *See* Motion at 2:18-20. Tesla does not and cannot explain how this meeting revealed a misappropriation.

Tesla's "key allegation" is based on unreasonable inferences and legal conclusions, not facts, and thus cannot support Tesla's misappropriation claims. *Iqbal*, 556 U.S. at 678-79. In addition, there are not "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). It behooves us to focus on the facts pleaded in the Complaint, not the lurid distractions. The pleaded facts are that:

  i.  Yatskov created Tesla-related material on his personal device and emailed the material to his Tesla email from his personal email;

  ii. upon learning this, Tesla asked Yatskov to come to a meeting and bring his personal devices;

  iii. Yatskov attended the meeting;

    iv.    Yatskov informed Tesla in the meeting that he had Tesla information on his personal devices;

    v.    Tesla searched the devices he had with him;

    vi.    the search showed that the laptop Yatskov brought with him had not be used since 2020 and had recently been updated with innocuous documents related to Tesla, like a hiring letter;

    vii.    Yatskov was placed on administrative leave; and

    viii.    Yatskov resigned soon after.

Based on these facts, Tesla unreasonably inferred that the laptop must be a "dummy" that Yatskov intentionally produced to trick Tesla into thinking that he did not have Tesla information on his personal devices. Tesla's story, however sensational, does not hold water. One would have to believe that an engineer with a Ph.D. who has worked for numerous tech companies over a decades-long career was foolish enough to think that he could deceive the security team of a major tech company with a laptop when the metadata could easily be checked. One would also have to believe that Yatskov told Tesla that he had Tesla information on his personal devices as part of his master plan to hide the fact that he had Tesla information on his personal devices. It does not add up, particularly because the same facts may be explained by Tesla doing a poor job communicating with its employee.

Plausibility aside, Tesla's "key allegation" has another fatal problem. It is built on a foundation of improper legal conclusions disguised as facts. Tesla alleges, as a fact, that Yatskov tried to deceive Tesla. Complaint at ¶¶ 5, 33. Whether Yatskov misled or deceived Tesla is a legal conclusion. *See Iqbal*, 556 U.S. at 678 (a pleading may not be based on "labels and conclusions"). Further, as discussed in the preceding section, the "key allegation" identified by Tesla in its Opposition contains facts that were never pleaded, including that Yatskov had files on a different computer. Even still, having files on his computer while employed at Tesla is not misappropriation.

### 2. The Court Should Disregard Tesla's Strawman Arguments

Tesla misrepresents Yatskov's arguments more than once in the Opposition. Opposition at 2:15-17, 4:17-2. Yatskov is not arguing – or "implying" – that the Court should overturn long-standing trade secret law. What Yatskov is asserting – not implying – is that there should be no cause of action where a trade secret owner fails to show misappropriation and fails to state a claim for trade secrets. With no facts or law to support its claims, Tesla makes up and attacks propositions rather than addressing the facts of this case.

### C. Neither "Trade Secrets" Nor Damages Are Sufficiently Pleaded

"Trade secret plaintiffs rarely provide a precise and complete identification of the alleged trade secrets at issue without a court order requiring them to do so. This is a strategy, not an accident. The tactical advantages a plaintiff gains from non-identification are too tempting for a plaintiff to voluntarily provide such identification." Charles Tait Graves and Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 69 (2006).

Tesla argues that it has adequately identified the "trade secrets" at issue as "thermal designs and data" based on "complex simulations" run by Yatskov's team. Opposition at 4:25-5:6 Tesla claims it "tethered" the description to the alleged wrongdoing by claiming that Yatskov tried to mislead Tesla with a "dummy" laptop. Opposition at 7:19-21. Tesla weakly fails to differentiate its pleading from the cases cited by Yatskov. Opposition at 6-7. The problem with Tesla's trade secret allegations is not that they are in list form but that they are too vague and generic to support Tesla's misappropriation claims.

Tesla's description in paragraph 16 of the Complaint is an explanation of the basic design process that is used across the industry: you compare multiple designs by running multiple simulations and compare what works best. We only know that that the "trade secrets" are general thermal designs and data from unspecified simulations. We do not know what the cooling systems at issue are. We do not know what the designs are for, apart from being related to cooling. We do not know what simulations were run. We do not know what data was produced in the simulations

or how Tesla uses that data. We do not know if any of the data is public or general knowledge in the industry.

In *Way.com, Inc. v. Singh*, the plaintiff actually provided an adequate description of trade secrets that included specific accounting methods and specific pricing information *and* identified a specific, confidential document. No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018). Similarly, in *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, the Court found that trade secrets described as "how it staffs its production lines" and "the order of operations" on the assembly line were adequately pleaded, while descriptions like "marketing strategy" or "packing and manufacturing logistics" on their own were just "categories of things that might contain trade secret information." No. 19-CV-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020). Tesla's descriptions are of categories of things that might contain trade secrets, not descriptions of trade secrets themselves, like the rejected descriptions in *Five Star*.

Tesla's concern that "a plaintiff with a valid trade secret need not disclose it in a public complaint for the world to see" is baseless given that a plaintiff may file a complaint under seal as Tesla did for its motion for a temporary restraining order in this matter under Civil Local Rule 79-5. Dckt. No. 6. Tesla's own counsel has advocated for a requirement that plaintiffs identify trade secrets "with precision" "both as a valuable case management process and to encourage pre-lawsuit investigations." Graves, *supra* at 97. Without knowing what the trade secrets are, Yatskov cannot know what damages Tesla claims. Yatskov is not alleged to have moved to a direct competitor of Tesla, nor is he alleged to be building a competing supercomputer in his garage. While a plaintiff does not need to wait to file a complaint until it has been damaged, a plaintiff must be able to explain how it could be damaged. Tesla has failed to do this. The damages requested in the Complaint thus only highlight how insubstantial its claims are. Complaint at ¶¶ 47, 60.

### D.   Any Amendment Would Be Futile

Tesla cannot save its claims by amending its Complaint. Tesla has already admitted that Yatskov had access to the alleged trade secrets as part of his job, which means Yatskov did not wrongfully come into possession of Tesla's data. Complaint at ¶ 17. Further, Tesla has not discovered any new facts to support its claims in recent discovery. Quite the opposite, Tesla's

counsel learned that Tesla does not have a written policy on using personal devices for Tesla work. As any amendment would be futile, the Court should dismiss Counts I and II with prejudice. *See Espinoza v. Union of Am. Physicians & Dentists, AFSCME Loc. 206*, 562 F. Supp. 3d 904, 913 (C.D. Cal. 2022); *Black v. City of Blythe*, 562 F. Supp. 3d 820, 828 (C.D. Cal. 2022).

## CONCLUSION

For the foregoing reasons, Yatskov respectfully requests that this Court to dismiss Counts I and II of Tesla's complaint with prejudice.

Dated: June 16, 2022            DONAHUE FITZGERALD LLP

By: *[signature]*
John C. Kirke
Katharine L. Malone
Hayley M. Lenahan
Attorneys for Defendant
ALEXANDER YATSKOV